<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FAATIR LAWSON,

    *Plaintiff,*

  v.

EAST ORANGE SCHOOL DISTRICT, et al.,

    *Defendants.*

Civil Action No. 16-2704

OPINION

    This matter comes before the Court by way of Defendants East Orange School District (the "District"), School Security Officials John Doe 1-10 ("Security Officials"), Gloria Scott ("Scott"), and Robert Morgan's ("Morgan") (together, "Moving Defendants") motions to dismiss Plaintiff Faatir Lawson's ("Lawson" or "Plaintiff") complaint. Dkt. Nos. 17, 21, 24. For the reasons set forth below, Defendants' motions will be **GRANTED** in part and **DENIED** in part.

**I. BACKGROUND**

    This matter arises from the alleged beating and arrest of Plaintiff Faatir Lawson while he was a student at East Orange High School (the "School"). Lawson brings suit against the District, the teacher Charles Hall ("Hall"),[1] unnamed Security Officials, Gloria Scott, superintendent of the District, and Robert Morgan, Principal of the School.

    **A. Application of Force Against Lawson**

    On October 25, 2013, the then sixteen-year old Lawson reported to a disciplinary classroom at the School for failing to fully change out of his gym clothing. Compl. ¶ 11, Dkt. No. 1. Hall,

---

[1] Hall has not moved to dismiss the claims against him.

1

the classroom teacher, instructed Lawson to sit in a particular seat in the classroom, which he refused to do. Id. ¶ 13. Hall then instructed Lawson to leave the classroom. Id. Lawson alleges that, once outside the classroom, Hall met him at the exit door and, "without warning or provocation, began violently assaulting [him], including the use of closed handed strikes to his head and body." Id. ¶ 13. Lawson attempted to escape through the exit door, but it was internally locked. Id. ¶ 14.

Lawson alleges that several security personnel witnessed the alleged assault but did not interfere. Id. ¶ 16. Security Officials eventually transported Lawson by wheelchair to a school nurse, who documented his injuries. Id. ¶¶ 20-21. Security Officials then took Lawson to the Principal's office, where he was handcuffed and placed under arrest. Id. ¶¶ 22-23. After being taken to the police department in the school gym, Lawson was then delivered to the East Orange General Hospital, where he was treated for his injuries. Id. ¶¶ 23-25. He received stitches for a wound on the inside of his lip. Id. ¶ 25. Upon discharge from the hospital, Lawson was transported to the East Orange Police Station, where he was charged with assault and booked. Id. ¶ 26. He was then incarcerated in the Essex County Juvenile Detention Center for several days. Id. ¶ 27.

### B. Lawson Suspension and Hall Arrest

Lawson alleges that following his arrest, Hall reported a false version of the incident, wherein Lawson was the aggressor. Id. ¶ 30. Lawson was subsequently expelled from school. Id. ¶ 31. As part of its investigation of the incident, the East Orange Police Department requested production of video surveillance. Id. ¶ 32. But, Lawson alleges, "[d]espite the known existence of surveillance video of the altercation," school officials "expressly advised authorities . . . that no footage existed." Id. ¶ 33. Lawson alleges that Moving Defendants conspired to "cover[] up the

incident, falsely detain[] him, withhold[] exculpatory evidence from law enforcement authorities and [to] assist[] Mr. Hall from initially evading criminal charges." Id. ¶ 100.

At an unknown date later in time, investigators became aware of video footage of the events of October 25, 2013. Id. ¶ 34. Upon review of the footage, the charges against Lawson were dropped, and he was permitted to return to school. Id. ¶ 35. Hall was then charged with crimes related to his conduct. Id. On August 15, 2014, Hall pled guilty to third degree Aggravated Assault and third degree Endangering the Welfare of a Child, receiving a sentence of three years' probation, community service, and participation in an anger management program. Id. ¶ 36.

### C. Procedural Background

Lawson filed the instant suit on May 12, 2016. His Complaint alleges several counts against non-moving Defendant Charles Hall.[2] In addition, Lawson alleges several federal and state claims against Moving Defendants. First, he asserts a common law Aiding and Abetting Battery/Negligence against the District (Count VI). Next, Lawson asserts four civil rights claims arising from violations of 42 U.S.C. § 1983: Conspiracy to Violate Constitutional Rights against all Moving Defendants (Count VII); Supervisor Liability against Morgan and Scott; (Count VIII) and Municipal Liability against Moving Defendants (Counts IX and X). Specifically, Lawson alleges that his Fourth Amendment rights against unreasonable search and seizure were violated when he was assaulted and detained by Mr. Hall in his classroom, detained at the nurse and principal's office, and then incarcerated at a juvenile detention center due to the false reporting of events by Moving Defendants. Compl. ¶¶ 43-48. Lawson alleges his Fourteenth Amendment due

---

[2] These counts include violations of his Fourth and Fourteenth Amendment rights, common law battery, and negligence as an agent of the District (Counts I through V). Id. ¶¶ 38-77.

process rights were violated through the unlawful application of force against him. Compl. ¶¶ 51-54. Moving Defendants seek dismissal of all counts against them.

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. However, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

### A. Negligence and Aiding and Abetting Liability

Lawson asserts negligence against Hall as an agent of the District (Count V) and "aiding and abetting battery/negligence per se/negligence" against the District and unidentified Security Officials (Count VI). The District moves to dismiss these claims on the basis that they are barred by the New Jersey Tort Claims Act (the "NJTCA"). The Court disagrees.

The parties agree that under the NJTCA, a "public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.SA. 59:2-10. In other words, there is no respondeat superior liability for intentional torts as opposed to negligence. The District contends that because Count V is premised

upon Hall's "'utilization of force upon [Plaintiff],'" and Count VI is premised on "the 'assault of the Plaintiff,'" they are barred under the NJTCA as claims that "arise from a 'crime' of a District employee." District Br. at 15. But the District's argument is not based on a proper characterization of Lawson's Complaint.

In Count V, Lawson asserts a claim for common law negligence against Hall as an agent of the District. He alleges that Hall "knew or should have known that his utilization of force upon the plaintiff was excessive and would unnecessarily harm . . . the Plaintiff." Compl. ¶ 76. While Lawson also asserts, under his count for battery (Count IV), that Hall's acts "were actuated by actual malice or accompanied by wanton and willful disregard of the foreseeable risk to Faatir's health and safety," Compl. ¶ 63, Fed. R. Civ. P. 8(d) permits plaintiffs to state as many separate claims as they have, regardless of inconsistency. Likewise, in Count VI, Lawson pleads liability against the District and security officials for aiding and abetting battery and—in the alternative— for aiding and abetting negligence. At this stage, the Court cannot determine whether Lawson's alleged injuries were the result of an intentional tort or negligence. Accordingly, Counts V and VI cannot be dismissed as barred by the NJTCA on the grounds that Plaintiff pled an intentional tort at this time.

Additionally, the District asserts in passing that aiding and abetting negligence is not a legally cognizable claim. This is not the case. New Jersey recognizes a cause of action for aiding and abetting where one party "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876(b) (followed by Tarr v. Ciasulli, 181 N.J. 70, 83 (2004)); see also Failla v. City of Passaic, 146 F.3d 149, 158 (3d Cir. 1998) (noting that New Jersey adopts a definition of civil aiding and abetting liability consistent with the Restatement (Second) of Torts § 876(b)).

Under New Jersey law, aiding and abetting requires a plaintiff to show that: (1) the principal performed an unlawful act; (2) the defendant knowingly and substantially assisted in the principal's violation, and (3) that the defendant was generally aware of his role as part of an overall tortious activity at the time he provided assistance. State Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns, Int'l, Inc. 387 N.J. Super. 469, 483 (App. Div. 2006).

Here, Lawson has alleged all the elements of an aiding and abetting claim. He alleges that Hall used "excessive force" on Plaintiff; that security officials "witnessed and directly observed" the alleged assault, but did not "stop the beating or in any manner protect the minor student;" and that the employees "reported a false version of the incident." Compl. ¶¶ 81-84. Accordingly, Counts V and VI cannot be dismissed at this time for failure to state a claim.

### B. Conspiracy

Moving Defendants contend that Lawson's Section 1983 conspiracy claim (Count VII) must be dismissed because he has failed to allege specific facts that support a conspiracy. They argue that the pleadings fail to allege an express agreement to deprive Lawson of any constitutional right, and fail to allege that Moving Defendants acted in a concerted fashion. The Court finds that Plaintiff has stated a conspiracy claim arising from a violation of his Fourth Amendment rights, but not arising from a violation of his Fourteenth Amendment rights.

In New Jersey, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 364 (App. Div. 1993), certif. denied, 135 N.J. 468 (1994) (quoting Rotermund v. U.S. Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973) (internal quotations

6

omitted)). Most importantly, the "gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" Id. at 364 (quoting Bd. of Educ. v. Hoek, 38 N.J. 213, 238 (1962)); see also Weil v. Express Container Corp., 360 N.J. Super. 599, 614 (App. Div. 2003), certif. denied, 177 N.J. 574 (2003). Specifically, a plaintiff must plead: "(1) the circumstances of the alleged conspiracy, such as those addressing the period of conspiracy; (2) the object of the conspiracy; and (3) certain actions of the alleged conspirators taken to achieve that purpose." May v. Chirichello, No. 09-3253, 2009 WL 3818146, at *3 (D.N.J. Nov. 13, 2009) (citing Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)). A Section 1983 conspiracy charge must be predicated on a viable constitutional claim. Sweetman v. Borough of Norristown, PA, 554 Fed. App'x 86, 90 (3d Cir. 2014) (citing Andree v. Ashland Cnty., 818 F.2d 1306, 1311 (7th Cir. 1987).

     Lawson alleges that Moving Defendants conspired to deprive him of both his Fourth Amendment right to be free from unreasonable seizure and his Fourteenth Amendment right to be free from the use of excessive force. Compl. ¶ 93. With regards to the alleged Fourth Amendment violation, Lawson has sufficiently alleged the circumstances, object, and actions taken in furtherance of the conspiracy. The Complaint purports that the conspiracy began when Security Officials "directly observed and chose not to curtail the violent beating of Plaintiff by Mr. Hall." Id. ¶ 94. Later, all Moving Defendants "reported a false version of the incident." Id. ¶ 95. Lawson alleges that the object of the conspiracy was to "cover[] up the incident, falsely detain[] Plaintiff, withhold[] exculpatory evidence from law enforcement authorities and assist[] Mr. Hall from initially evading criminal charges." Id. ¶ 100. Lawson further pleads that Moving Defendants took the steps of "failing to give an accurate reporting of the incident, misrepresenting the events to authorities and/or withholding exculpatory evidence" that prolonged Lawson's detention. Id. ¶

99. While Lawson does not allege an explicit agreement made between Moving Defendants, "[i]t is enough [for liability] if [defendants] understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do [their] part to further them." Banco Popular North Am. v. Gandi, 184 N.J. 161, 177 (2005) (quoting Jones v. City of Chicago, 856 F. 2d 985, 992 (7th Cir. 1988)). As such, Plaintiff states a claim for conspiracy to commit a Fourth Amendment violation.[3]

However, to the extent that Lawson seeks to bring a 1983 conspiracy count arising from a violation of his Fourteenth Amendment rights, he has not stated a claim. In support of this claim, Lawson pleads the same facts as above. Although he has alleged the circumstances of the conspiracy, he has not alleged how the object and acts taken in furtherance of the conspiracy led to a Fourteenth Amendment violation. Lawson alleges that he was deprived of his Fourteenth Amendment rights when excessive force was applied against him. But he has not alleged that Moving Defendants acted in concert to inflict bodily harm on him. Nor has he alleged any acts that Moving Defendants took to further the infliction of bodily harm.

In sum, Count VII is dismissed only to the extent it asserts Fourteenth Amendment violation. However, Plaintiff has stated a conspiracy claim arising from a violation of his right to be free from unreasonable seizure. Plaintiff is granted leave to amend the claim with respect to his allegations that Moving Defendants conspired to violate his Fourteenth Amendment rights.

**C. Supervisor Liability**

---

[3] The Court notes that while the parties do not dispute whether Plaintiff's purported detentions—both in school and at the juvenile facility—indeed constitutes a Fourth Amendment violation, Plaintiff will need to provide a basis that the facts alleged here actually arose to the level of a Fourth Amendment violation.

Defendants Morgan and Scott assert that Count VIII, Supervisor Liability pursuant to Section 1983, must be dismissed because the Complaint does not allege their specific involvement in the alleged violations of Lawson's rights. In addition, Scott claims that she is entitled to qualified immunity.[4] The Court finds that Plaintiff has stated a supervisor liability claim arising from a violation of his Fourth Amendment rights, but not arising from a violation of his Fourteenth Amendment rights.

1. Personal Capacity Under Section 1983

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. Iqbal, 556 U.S. at 676; Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). In Iqbal, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Thus, each government official is liable only for his or her own conduct. The Third Circuit Court of Appeals recognizes supervisor liability where a supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 127 n. 5 (3d Cir.2010). "[P]ersonal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right." Dare v. Township of Hamilton, No. 13-1636, 2013 WL 6080440, at *7 (D.N.J. Nov. 18, 2013) (citations omitted).

---

[4] The parties do not dispute that Count VIII is asserted against Morgan and Scott in their individual capacities.

9

As with his conspiracy claim, Lawson pleads supervisor liability arising from both a deprivation of his Fourth Amendment right to be free from unreasonable seizure and his Fourteenth Amendment right to be free from the use of excessive force. Here, Lawson has alleged the personal involvement of both Morgan and Scott in the violation of his constitutional rights to be free of unreasonable seizure. First, he alleges their knowledge and acquiescence. He states that Morgan and Scott "learned of the altercation between Mr. Hall and [Lawson] almost immediately after it happened," and was aware that "a false version of the incident, wherein Mr. Hall was the victim and [Lawson] was the aggressor, was reported by [Scott's] subordinates." Compl. ¶¶ 106-108. Second, Lawson also sets forth affirmative actions by Morgan and Scott to "misrepresent[] the events to authorities and/or withhold[] crucial exculpatory evidence." Id. ¶ 99. These acts together allegedly furthered Lawson's detention at school and at the juvenile facility, the basis of his Fourth Amendment claim.

However, Lawson has not stated a supervisor claim arising from any deprivation of his Fourteenth Amendment rights. He has not alleged any facts suggesting that either Morgan or Scott participated in or directed others to use excessive force against Lawson. While he alleges that Morgan and Scott's actions "communicated a message of approval of the physical abuse inflicted upon the Plaintiff," Lawson's allegations also indicate that any knowledge or approval only occurred <u>after</u> Morgan and Scott learned of the alleged assault on Lawson. Accordingly, Count VIII cannot be dismissed to the extent that it states a claim arising from a Fourth Amendment violation. Plaintiff is granted leave to amend the claim with respect to his allegations that supervisor liability arises from a violation of his Fourteenth Amendment rights.

2. Qualified Immunity

Although qualified immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face. Thus, qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Brown v. Daniels, 128 Fed. App'x 910, 915 (3d Cir. 2005). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional laws of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right may be clearly established even if there is no "previous precedent directly in point." Good v. Dauphin County Soc. Servs. for Children & Youth, 891 F.2d 1087, 1092 (3d Cir. 1989) (denying qualified immunity and citing case law from other jurisdictions). "The ultimate issue is whether . . . reasonable officials in the defendants' position at the relevant time could have believed that, in light of what was in the decided case law, that their conduct would be lawful." Id.

Here, Scott has not asserted a basis for why she is entitled to qualified immunity for claims that arise from her alleged involvement in abridging Lawson's rights to be free from seizure. Moreover, a student's right to be free from unreasonable seizures has been "clearly established" as to students in school. The United States Supreme Court has held that the Fourth Amendment extends this constitutional guarantee to searches and seizures by state officers, including public school officials. See New Jersey v. T.L.O., 469 U.S. 325 (1985); see also Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001); Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 147 (3d Cir. 2005). Therefore, qualified immunity does not provide a basis for dismissal at this time.

**D. Municipal Liability**

Finally, in Counts IX and X, Lawson alleges municipal liability against Moving Defendants for adopting policies and hiring practices that led to violations of Lawson's Constitutional rights. Moving Defendants assert that these claims should be dismissed because Lawson has not alleged a policy, custom, or practice, or any causal link between the policy or custom and the alleged Constitutional violations. The Court agrees.

1. Municipal Liability for Unlawful Policy/Custom

A municipality may be liable under Section 1983 for a policy or practice of violating constitutional rights. See Monell, 436 U.S. 658. The Third Circuit recognizes three ways in which a municipality may be vicariously liable for the torts of their employees under a policy or custom: "(1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; (2) the individual himself has final policy-making authority such that his conduct represents official policy; or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred." Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006). To state a 1983 claim for municipal liability, a plaintiff must allege the existence of: (1) a policy or lack thereof; (2) a policy maker that effectuated said policy; and (3) a constitutional violation whose "moving force" was the policy in question. Monell, 436 U.S. at 694.

Here, there is no dispute that Lawson has alleged that Robert Morgan and Gloria Scott "were the final policymakers" of the District and the High School. Compl. ¶ 119. However, Lawson has not sufficiently alleged a policy or custom. A "policy is made when a 'decision maker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when; though

not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). Lawson alleges a "policy, practice and/or custom for the School in internally locking the exit doors on the first floor near the in-school suspension classroom." Compl. ¶ 120. Yet, he has not pointed to any facts to suggest that the locking of the exit doors was indeed pursuant to any "official proclamation, policy, or edict." Lawson does not allege any additional incidents where the door was locked, or any facts about the alleged policy, such as when it was adopted. His pleadings support a narrative that the alleged door-locking "policy" was only in place for a day, and only harmed himself. "Where a Complaint contains an allegation of a municipal policy or custom that is merely conclusory and vague, claims against the municipality are properly dismissed." Wright v. Borough of Buena, No. 05-4782, 2016 WL 1644869, at *5 (D.N.J. June 12, 2005); see also Rios v. City of Bayonne, No. 12-4716, 2015 WL 2400756, at *2 (D.N.J. May 19, 2015) (holding that plaintiff's allegations that "the City of Bayonne has a policy and practice of not disciplining officers if they are found to have violated a citizen's right" was too conclusory to state a Monell claim).

Even if Lawson's allegation of policy is sufficient, he has not alleged causation. For claims of municipal liability, "a plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered." Bielevicz v. Dubinon, 915 F.2d 845, 850-51 (3d Cir. 1990). To establish causation, a plaintiff must demonstrate "a plausible nexus or affirmative link between the municipality's custom and the deprivation at issue." Id. "Causation can be established only be demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences." Andrews v. Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). "If . . . the policy or custom does not facially violate federal law, causation can be

established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences." Chambers v. School District of Phila., 587 F.3d 176, 193 (2009). Here, Lawson has not alleged a policy or custom that violates federal law on its face. Instead, he alleges that locked-door policy "was deliberately indifferent to the rights of students to be free from unreasonable seizures in general, and was specifically a substantial cause of the physical seizure of the Plaintiff," which he avers is a Fourth Amendment violation. Compl. ¶ 121. However, he has not alleged any additional facts as to why or how his alleged seizure was an obvious consequence of the policy. In addition, Lawson simply makes a conclusory statement that "as a direct result of the defendants' above-described policy, practice and/or custom, Plaintiff was deprived of his constitutional right to be free from unreasonable seizure and the infliction of excessive force." Id. ¶ 123. This is not enough. Lawson has not alleged any supporting facts as to why or how the School's locked-door policy specifically led to the alleged seizure and assault on him. Indeed, Lawson's Complaint suggests that the alleged seizure and assault occurred independent of the locked door because it began before he reached the exit door.

      2. Municipal Liability for Unlawful Hiring Practices

To bring a claim of deliberate indifference in hiring under Section 1983, a plaintiff must be able to plausibly allege that "'this officer was highly likely to inflict the particular injury suffered by the plaintiff' and that the decisionmaker was deliberately indifferent to that likelihood in hiring the offending party." Lapella v. City of Atlantic City, No. 10-2454, 2012 WL 2952411, at *9 (D.N.J. July 18, 2012) (quoting Bd. of Cnty. Comm'rs of Bryan Cty., Okl. V. Brown, 520 U.S. 397, 411 (1997)). Lawson, however, again fails to allege sufficient non-conclusory facts to support this claim. He simply states: "In failing to adequately screen Robert Hall for employment . . . Defendants, Principal Robert Morgan and/or Superintendent Gloria Scott, were deliberately

14

indifferent to the safety risk upon the high school students in his custody and charge." Compl. ¶ 129. Lawson alleges no facts about the process by which Hall was hired. The Complaint identifies no warning signs in his background that a diligent search would have uncovered. And it fails to allege that such facts, if uncovered, would have prevented a prudent employer from hiring Hall.

Accordingly, Lawson's Counts IX and X for municipal liability are dismissed without prejudice.[5]

**IV. CONCLUSION**

For the foregoing reasons, summary judgment is **GRANTED** in part and **DENIED** in part. Plaintiff is granted leave to file an amended complaint. An appropriate order accompanies this opinion.

**Date: February 27, 2017**   */s Madeline Cox Arleo*_____
           **MADELINE COX ARLEO**
           **UNITED STATES DISTRICT JUDGE**

---

[5] Morgan and Scott argue that Counts IX and X must be dismissed with prejudice as to them because they are redundant of the claims against the District. In general, claims against individuals in their official capacity are redundant with claims against public entities. As the Supreme Court has noted, "[t]here is no longer a need to bring official-capacity actions against local government officials, for under Monell . . . local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985). But whether such claims should be dismissed with prejudice as to the individual defendants depends on whether "those defendants must answer other charges against them in the same action." Crump v. Passaic Cty., 147 F. Supp. 3d 249, 259 (D.N.J. Dec. 2, 2015). Because a claim for supervisor liability against Morgan and Scott in their individual capacities (Count VIII) remains in this case, the Court declines to dismiss Lawson's municipal liability claims against Morgan and Scott with prejudice at this time. See id., (declining to dismiss federal claims against government officials sued in their official capacity where state law claims were pending).